**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-60831
(Summary Calendar)

SOUTHERN PILOT INSURANCE COMPANY, INC.,

Petitioner-Appellee,

versus

HERBERT LEON BREWER, III; TENNESSEE
PROPERTIES, INC.;  ADVANCED FAMILY
REHAB, INC.; ADVANCED FAMILY
MEDICAL, INC.,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi
(1:96-CV-93)

August 29, 1997
Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Appellants, Herbert Leon Brewer, III, Tennessee Properties, Inc., Advanced Family Rehab,

Inc., and Advanced Family Medical, Inc. appeal the district court's grant of summary judgment in

favor of Southern Pilot Insurance Company, Inc. ("Southern Pilot").  Appellants assert that the

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

district court's finding that they failed to cooperate as required under the terms of the insurance contract and its subsequent grant of summary judgment was in error. For the foregoing reasons, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At the heart of this cause of action is a suspicious fire occurring on December 4, 1995 which destroyed the Verona, Mississippi chiropractic office of Dr. Herbert Leon Brewer, III, ("Dr. Brewer"). [1] Approximately four days before the fire, Dr. Brewer entered into an insurance contract with Southern Pilot to i nsure the Verona office.[2] Southern Pilot was verbally bound by its agent, Dennis Hall ("Hall") on December 1, 1995 to provide coverage in the amount of $154,000 for the office building and $250,000 for its contents. The policy was to take effect on December 4, 1995 at 12:01 a.m. Within hours of the policy taking effect, the building was consumed by fire resulting in substantial damage to the building and its contents.

---

[1] The record owner of the Verona property is Tennessee Properties, Inc. Dr. Brewer is the sole shareholder of Tennessee Properties, Inc., as well as the sole shareholder of Advanced Family Rehab, Inc., and Advanced Family Medical, Inc.

[2] The Duties in the Event of Loss or Damage provision of the policy issued to Dr. Brewer provided, in pertinent part, that Dr. Brewer had to:

    (f)     Permit us [Southern Pilot] to inspect the property and records proving the loss or damage. Also permit us to take samples of damaged property for inspection, testing and analysis.

    (g)     If requested, permit us to question you under oath at such times as may be reasonably required about any matter relating to this insurance of your claim, including your books and records. In such event your answers must be signed.

    (h)     Send us a signed sworn statement of loss containing the information we request to the investigate the claim. You must do this within 60 days of our request. We will supply you with the necessary forms.

    (i)     Cooperate with us in the investigation or settlement of the claim.

Southern Pilot was immediately notified and retained the services of Ward-THG Insurance Adjusters ("Ward") of Tupelo, Mississippi to investigate the fire and adjust the loss. Ward appointed Thomas Berry ("Berry") as adjuster for the case. The State Fire Marshal performed an independent investigation of the cause and origin of the fire and concluded that it was incendiary in origin. Berry retained the services of an independent cause-and-origin specialist to conduct a second inquiry into the origin of the fire. That investigation also revealed that the fire was incendiary in origin.

Due to the suspicious nature of the fire, Berry proceeded to investigate Dr. Brewer's claim.[3] Throughout the investigatory period, Berry made numerous requests of Dr. Brewer, such as Dr. Brewer submitting a sworn statement of proof of loss, providing IRS authorization for Southern Pilot to access his tax records, executing a financial disclosure release, and providing access to alarm company records regarding the premises. Dr. Brewer either failed to respond to the requests or provided incomplete or inadequate information. Southern Pilot also requested that Dr. Brewer submit to an examination under oath and produce certain documents and records, but Dr. Brewer refused to answer questions or produce documents.

On April 3, 1996, Southern Pilot filed a motion for declaratory judgment seeking to void the insurance policy on the ground that Dr. Brewer failed to cooperate with its investigation of the claim. Dr. Brewer answered pro se and counterclaimed alleging bad faith. Subsequently, Southern Pilot filed a motion for summary judgment, but Dr. Brewer failed to reply. On September 26, 1996, the district court entered judgment in favor of Southern Pilot concluding that by failing to cooperate, Dr.

---

[3] During the course of his investigation, Berry discovered that Dr. Brewer had filed bankruptcy in 1993 and had been convicted for possession of explosives in the Circuit Court of Lee County. Berry also discovered that Dr. Brewer was being investigated by the District Attorney's Office, the State Fire Marshal's Office and the Federal Bureau of Investigation.

Brewer had forfeited his rights under the insurance policy and the counterclaim was meritless. On October 4, 1996, represented by counsel, Dr. Brewer filed a motion for reconsideration asserting extenuating circumstances and seeking relief from the court to file a response to Southern Pilot's summary judgment motion. The district court granted Dr. Brewer's request; however, the district court reaffirmed its earlier ruling and disposed of all issues in the case with prejudice. Dr. Brewer timely appealed.

## DISCUSSION

We must first determine whether Dr. Brewer has properly preserved his appeal of the district court's grant of summary judgment. Southern Pilot argues that since Dr. Brewer's Notice of Appeal specified the district court's "Order Upon Reconsideration" as the foundation of the appeal, the summary judgment is not subject to review. Moreover, Southern Pilot contends that this court's review of the order is limited to whether the district court abused its discretion. We disagree. Inarguably, in the subject case the district court's Order Upon Reconsideration is inextricably intertwined with the court's previous grant of summary judgment. For example, the order expressly states "after review of the brief and documentation of defendants, the court is of the opinion that summary judgment was properly granted" and "the summary judgment will stand." Finding that the Order Upon Reconsideration is premised upon the district court's previous grant of summary judgment, we hold that district court's grant of summary judgment was properly preserved for our review.

This court reviews a grant of summary judgment under the parameters established by Fed. R. Civ. P. 56. Summary judgment shall be granted if the record, taken as a whole, "together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

4

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. We review a grant of summary judgment de novo, applying the same standard set by the district court, and in reviewing the facts, we draw all inferences most favorable to the party opposing the motion." *Mulberry Square Productions, Inc. v. State Farm Fire and Casualty, Co.*, 101 F.3d 414 (5th Cir 1996). Fed. R. Civ. P. 56(e) requires that when a proper motion for summary judgment is made, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. To defeat a motion for summary judgment, the non-moving party must show that "the evidence is such that a reasonable jury could return a verdict in his favor. *Id.* at 248, 106 S. Ct. at 2510.

Because this is a diversity case, we apply the substantive law of Mississippi to this insurance dispute. *Mulberry*, 101 F.3d at 420. We recognize that the state of Mississippi has held that in construing an insurance contract, courts must adhere to the plain language of the contract as written, provided there is no ambiguity. *MacFarland v. Utica Fire Ins. Co.*, 814 F. Supp. 518, 523 (S.D. Miss. 1992); *See also Foreman v. Continental Cas. Co.*, 770 F.2d 487, 489 (5th Cir. 1985); *Aero Int'l, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir. 1983). Moreover, Mississippi courts have expressly stated that "no rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear." *Foreman*, 770 F.2d at 489.

5

In this case, Dr. Brewer contends that the district court reversibly erred in granting summary judgment. More specifically, Dr. Brewer argues that he submitted a substantially complete sworn proof of loss as required by the policy, that he was only obligated to provide Southern Pilot with the financial records of the named insured and that during the deposition he was under no duty to answer "immaterial" questions. Relying on 44 AM JUR 2D *Insurance* § 1360, Dr. Brewer argues that "in the case of a fire insurance policy, an affidavit by the insured which describes the premises insured and states their loss and the date thereof, the amount of the damage and of the insurance, and that the cause of the fire is unknown, is substantial compliance with the terms of the policy requiring the insured to furnish the insurer with proof of loss." Though this language arguably supports Dr. Brewer's contention, we do not find it persuasive or controlling.

As we have previously stated, we are bound by the plain meaning of the contract. *MacFarland*, 814 F. Supp. at 523. Insurance companies require a proof of loss to enable them to determine if the claim comes within the terms of the policy, to make an investigation, and to prevent fraud. Eugene R. Anderson, Richard G. Tuttle & Susannah Crego, *Draconian Forfeitures of Insurance: Commonplace, Indefensible, and Unnecessary*, 65 Fordham L. Rev. 825, 835 (1996). The insurance contract expressly provided that in the event of a loss, the insured must send "a signed sworn statement of loss containing the information we request to investigate the claim" on the forms provided and that the statement must be sent within 60 days of Southern Pilot's request. Thus, pursuant to the terms of the policy, Southern Pilot provided Dr. Brewer with a detailed sworn proof of loss form which had to be completed and returned within 60 days. However, the form received from Dr. Brewer failed to provide Berry with any information that would assist in the adjustment of the claim. Dr. Brewer did not provide Southern Pilot with any information regarding title and

6

interest, replacement costs for the contents, or a listing of the contents. Thus, we reject Dr. Brewer's argument that he substantially complied with Southern Pilot's request.

Next, we address Dr. Brewer's argument that Southern Pilot's investigation and request for financial records was limited to the records of the named insured and that at the examination under oath he was under no duty to answer immaterial questions.[4] Dr. Brewer's argument is premised on Southern Pilot's request for his personal financial records, as well as the records of the named insured, Tennessee Properties, Inc.

The Mississippi Supreme Court has stated that "the purpose of requiring answers to questions is so that an insurance company may properly protect itself against false claims." *Allison v. State Farm Fire & Casualty Co.*, 543 So.2d 661, 664 (*citing Edmiston v. Schellenger*, 343 So.2d 465, 467 (Miss. 1977). Where an insured fails to submit to examination under oath or refuses to answer material questions during an examination under oath, the policy is considered void. *Saucier v. United States Fidelity and Guaranty Co.*, 765 F. Supp. 334, 336 (S.D. Miss. 1991) (*citing Taylor v. Fireman's Fund Ins. Co.*, 306 So.2d 638, --- (Miss. 1974). Moreover, "where a policy requires production of documents in support of a claim, a refusal by the insured to produce for examination written documents which are pertinent and material to the insurance and loss is a bar to recovery under the policy." *United States Fidelity and Guaranty Co. v. Conaway*, 674 F.Supp. 1270, 1273 (N.D. Miss. 1987) (*citing Southern Guaranty Ins. Co. v. Dean*, 172 So.2d 553, 556 (Miss. 1965)).

Dr. Brewer relies on the Mississippi Supreme Court's opinion in *Monticello Ins. Co. v.*

---

[4] A review of the transcript reveals that Dr. Brewer refused to answer any question he considered to be immaterial to the insurance policy. Among those questions were requests for his address, marital status, educational background, and military service. Dr. Brewer's response to many of these questions was "that wasn't required by the policy." As a result of Dr. Brewer's reluctance to respond to cooperate, the examination under oath was terminated.

*Mooney*, ___ So.2d ___ (Miss. 1996), in which the court addressed the issue of whether the insured's refusal to produce the financial records of the named insured's spouse are discoverable for purposes of investigating a loss. In *Mooney*, the insured took the position that the financial records of her husband's independent business were not discoverable by the insurance company because they were immaterial and the production of the documents would be burdensome, time consuming, and difficult. In response to this position, the insurer filed a motion for declaratory judgment asserting that the insured had refused to cooperate. Admonishing that " questions and documents relating to the business and personal finances of the insured . . . [are] material to fire investigations, the Mississippi Supreme Court held that insured's refusal to produce her husband's separate business financial records was the result of "the sheer volume of material and the exorbitant costs involved in producing the requested information" and not an absolute refusal to cooperate. *Id*. Thus, the court held that the insured had materially complied with the terms of the insurance contract. *Id*.

The case before us today is clearly distinguishable from *Mooney*. Dr. Brewer is the sole shareholder of the insured, Tennessee Properties, Inc, therefore his personal finances are in issue and subject to inquiry. *See Mooney, supra*. Southern Pilot requested, pursuant to the terms of the insurance policy, that Dr. Brewer submit to an examination under oath and produce particular documents. However, the record reveals that Dr. Brewer refused to cooperate in the examination under oath exhibiting a "tell me yours and I will tell you mine" attitude. Moreover, the record also reveals that Dr. Brewer arrived at the examination with the requested documentation, but refused to surrender the documents to Southern Pilot's attorney. Unlike the insured in *Mooney*, Dr. Brewer's refusal to cooperate cannot be considered the result of an undue burden and is more than likely a bad faith refusal to cooperate. Therefore, we conclude that the circumstances created by Dr. Brewer

8

prompted Southern Pilot to inquire into Dr. Brewer's personal finances. Dr. Brewer's failure to cooperate in the examination under oath and refusal to provide the requested information supports Southern Pilot's contention that the district court's grant of summary judgment was correct.

## CONCLUSION

We conclude that Dr. Brewer's failure to comply with the terms of the insurance contract and submit a complete sworn proof of loss statement, his failure to submit to examination under oath, and his failure to supply Southern Pilot with the requested information constitute a material breach of the policy. Accordingly, we affirm the district court's grant of summary judgment.

AFFIRMED.